IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BENJAMIN ADAMS,

    Plaintiff,                    No. CIV S-04-2474 MCE GGH P

    vs.

TERESA SCHWARTZ , et al.,

    Defendant.               FINDINGS AND RECOMMENDATIONS,

_____/

Introduction

        Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983.  Pending before the court is defendant's motion for summary judgment, or, in the alternative, summary adjudication of issues, filed on July 20, 2007, to which plaintiff filed an opposition, after which defendant filed a reply.

Allegations

        In his amended complaint, plaintiff names Correctional Officer (C/O) Brida, employed at California Medical Facility -Vacaville (CMF-Vac), as the defendant.  Plaintiff states that defendant Brida, the correctional officer (C/O) assigned to wing H2 where plaintiff is housed, is responsible for making sure that porters assigned to clean and mop the floors put caution signs out at all times when the floors are wet from being mopped.  First Amended

1

1  Complaint (FAC), p. 2.  Plaintiff alleges that defendant Brida failed to instruct the porters to
2  fulfill their assigned duties for the entire period of time that he was the assigned wing officer in
3  H2.  Id.

4         On or about April 14, 2004, defendant Brida refused to perform his duties by
5  failing to instruct the porters to place caution signs out while the floor was wet.  FAC, p. 2.  As a
6  result, plaintiff slipped and fell, cracking his tailbone, injuring his back, kidneys, neck and head,
7  and suffering severe pain.  Id.  Defendant Brida continues to refuse to enforce the rules regarding
8  caution signs when floors are being mopped in H2 wing.  Id.

9         Plaintiff has been provided a cervical collar by non-defendant Dr. Low to try to
10 ease plaintiff's neck pain.  FAC, p. 2, 8.  Plaintiff includes exhibits to his amended complaint
11 which he avers demonstrate that three facility doctors have confirmed that plaintiff has sustained
12 serious injuries from his fall.  FAC, pp. 3, 6-7.

13        Plaintiff seeks compensatory and punitive money damages, as well as any
14 declaratory or injunctive relief found to be appropriate.  FAC, p. 4.[1]

15 Motion for Summary Judgment

16        Defendant Brida moves for summary judgment on the ground that he was not
17 deliberately indifferent to plaintiff's health and safety and did not intentionally subject plaintiff to
18 any known risk of serious harm, contending that there is no triable issue of fact and that he is
19 entitled to judgment as a matter of law.  Motion for Summary Judgment (MSJ), pp. 2.  Further,
20 defendant claims entitlement to qualified immunity.  MSJ, pp. 8-11.

21       *Legal Standard for Summary Judgment*

22        Summary judgment is appropriate when it is demonstrated that the standard set
23 forth in Fed. R. Civ. P. 56(c) is met.  "The judgment sought shall be rendered forthwith if . . .
24 there is no genuine issue as to any material fact, and . . . the moving party is entitled to judgment

---

[1] Plaintiff's allegations, with minor modification herein, were set forth in a previous Order, filed on February 2, 2007, p. 2.

as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct., 2548, 2553 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322, 106 S. Ct. at 2552. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323, 106 S. Ct. at 2553.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11, 106 S. Ct. at 1356 n. 11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.

3

Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255, 106 S. Ct. at 2513. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S.Ct. 1356 (citation omitted).

On April 11, 2005, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v.

4

Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

*Undisputed and Disputed Facts*

Defendant sets forth the following as undisputed facts (DUF), the first two of which are not disputed by plaintiff. DUF 1. At all relevant times, defendant Brida was employed as a Correctional Officer by the California Department of Corrections and Rehabilitation (CDCR), California Medical Facility- Vacaville (CMF-Vac), assigned to the housing unit where plaintiff was housed. (Declaration of Dave Brida (hereinafter "Brida Dec."), ¶ 2). DUF 2. Defendant Brida's primary job duties consisted of maintaining order and security of the housing unit. His duties also included the supervision of inmate porters who were assigned the job of mopping the floors in the housing unit. (Defendant Brida's Dec., ¶ 3).

The facts plaintiff seeks to adamantly dispute are: DUF 3. Inmate porters are trained to put up "caution" signs when mopping the floors. (Brida's Dec., ¶ 3). DUF 4. At no time was defendant Brida aware of any dangerous condition of the floor that resulted in plaintiff's slip and fall on April 14, 2004. (Brida's Dec., ¶ 4). DUF 5. At no time did defendant Brida deliberately ignore the health and safety of plaintiff or other inmates. (Brida's Dec., ¶ 5). DUF 6. At no time did defendant Brida ever intentionally or knowingly cause plaintiff to experience any pain, injury or suffering. (Brida's Dec., ¶ 6).

Plaintiff does not set forth evidence in his opposition that actually disputes the facts as expressed above, but simply states, in essence, that this defendant has never instructed the porters to put out "caution" signs regarding wet floors, and that in failing to do so, he has been deliberately indifferent to a substantial risk of injury to plaintiff. Opposition (Opp.), pp. 1-5. In Reply, defendant avers that plaintiff has not submitted admissible evidence to refute the defendant's undisputed statement of facts, but has merely relied on unauthenticated documents in his opposition to support a claim that he has been injured, rather than meeting his burden of proof to show defendant's "deliberate indifference." Reply, pp. 1-4.

\\\\\

The court observes that notably absent from defendant's statement of undisputed facts is any affirmative statement that defendant took any steps whatever to ascertain that the porters, in fact, placed "caution" signs out when mopping floors in H2 wing, whether on April 14, 2004, or on any date before or after the incident at issue, in the course of his supervisory duties. On the other hand, as to DUF 3, that the porters are trained to put out wet floor caution signs when mopping is not disputed by plaintiff when he simply alleges that defendant did not supervise them properly to make sure that they put out the signs.

*Eighth Amendment Legal Standard*

"Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000), citing, inter alia, Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970 (1994). When an inmate has been deprived of necessities, "the circumstances, nature and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred." Johnson, supra, at 731.

The Ninth Circuit, in concluding that safety hazards, exacerbated by poor or inadequate lighting, pervaded a Washington penitentiary's occupational areas, "seriously threaten[ing] the safety and security of inmates and creat[ing] an unconstitutional infliction of pain," has stated:

> Persons involuntarily confined by the state have a constitutional right to safe conditions of confinement. See Youngberg v. Romeo, 1982, 457 U.S. 307, 315-16, 102 S.Ct. 2452, 2458, 73 L.Ed.2d 28; Santana v. Collazo, 1 Cir., 1983, 714 F.2d 1172, 1183. Not every deviation from ideally safe conditions amounts to a constitutional violation, see, e.g., Santana at 1183. However, the Eighth Amendment entitles inmates in a penal institution to an adequate level of personal safety. This is required because inmates, by reason of their confinement, cannot provide for their own safety. Santana, supra, 714 F.2d at 1183. See also Estelle v. Gamble, 1976, 429 U.S. 97, at 103-04, 97 S.Ct. 285, 290-91, 50 L.Ed.2d 251.

Hoptowit v. Spellman, 753 F.2d 779, 784 (9th Cir. 1985).

Prisoners alleging Eighth Amendment violations based on unsafe conditions must demonstrate that prison officials were deliberately indifferent to their health or safety by subjecting them to a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. at 833, 114 S. Ct. at 1977. "For a claim ... based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Id. at 834, 114 S. Ct. at 1977. The prisoner must also demonstrate that the defendant had a "sufficiently culpable state of mind." Id. This standard requires that the official be subjectively aware of the risk; it is not enough that the official objectively should have recognized the danger but failed to do so. Id. at 838, 114 S. Ct. at 1979. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." Id. at 837, 114 S. Ct. at 1979. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not...." does not rise to the level of constitutionally deficient conduct. Id. at 838, 114 S. Ct. at 1979. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 842, 114 S. Ct. at 1981. If the risk was obvious, the trier of fact may infer that a defendant knew of the risk. Id. at 840-42, 114 S. Ct. at 1981. However, obviousness per se will not impart knowledge as a matter of law.

"[D]eliberate indifference entails something more than mere negligence...[but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005), quoting Farmer, supra, 511 U.S. at 835, 114 S. Ct. 1970. Prison officials display a deliberate indifference to an inmate's well-being when they consciously disregard an excessive risk of harm to that inmate's health or safety. Farmer, 511 U.S. at 837-838, 114 S. Ct. at 1979-80.

In Osolinski v. Kane, 92 F.3d 934 (9th Cir. 1996) a prisoner brought a § 1983 action claiming that the failure of prison officials to repair an oven, the door of which fell off and burned his arm, violated the Eighth Amendment. In Osolinski, the Ninth Circuit found that it was not clearly established that a single defective device, without any other conditions

7

contributing to the threat of an inmates' safety, created an objectively insufficiently inhumane condition sufficient to be violative of the Eighth Amendment. 92 F.3d at 938. In reaching this finding, the Ninth Circuit noted the following several cases which held that minor safety hazards did not violate the Eighth Amendment. Id. In Tunstall v. Rowe, 478 F. Supp. 87, 89 (N.D.Ill. 1979), the existence of a greasy staircase which caused a prisoner to slip and fall and injure his back did not state a constitutional claim under the Eighth Amendment because prison officials are not under a constitutional duty to assure that prison stairs are not greasy. In Snyder v. Blankenship, 473 F. Supp. 1208, 1212 (W.D.Va. 1979), the failure to repair a leaking dishwasher which resulted in a pool of soapy water in which prisoner slipped, injuring his back, did not violate the Eighth Amendment as "a slip and fall injury is not comparable to a prison-related injury, such as harm caused by the assault of fellow inmates, for example." In Robinson v. Cuyler, 511 F. Supp. 161, 163 (E.D.Pa. 1981), the court found that where a prisoner slipped on a wet floor and was burned by the contents of an overturned pot an Eighth Amendment violation was not stated as "[a] slippery kitchen floor does not inflict 'cruel and unusual punishments.'" In Osolinski, 92 F.3d at 938-939, the Ninth Circuit also distinguished the facts of a Second Circuit case, Gill v. Mooney, 824 F.2d 192, 195 (2d Cir. 1987), wherein plaintiff survived a motion to dismiss on a claim of an Eighth Amendment violation, where plaintiff averred that defendant had ordered him to continue working on a ladder after plaintiff had told defendant it was unsafe, because "[t]he order to remain on the ladder in Gill exacerbated the inherent dangerousness of the defective ladder, rendering the ladder a serious safety hazard, akin to those found in Hoptowit."[2]

Furthermore, the Ninth Circuit has stated flatly that slippery prison floors do not set forth a constitutional violation. Jackson v. State of Ariz., 885 F.2d 639, 641 (9th Cir. 1989) (superseded on another ground) (inmate's complaint about slippery prison floors does not state

---

[2] See Hoptowit v. Spellman, supra, 753 F.2d 779.

even an arguable Eighth Amendment violation), citing Rhodes v. Chapman, 452 U.S. 337, 349, 101 S. Ct. 2392, 2400 (1981) ("the Constitution does not mandate comfortable prisons....").

On the other hand, the Ninth Circuit has also found that slippery floors without protective measures could constitute a condition of deliberate indifference. Frost v. Agnos, 152 F.3d 1124, 1129 (9th Cir. 1998), citing LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir. 1993) (inmates entitled to protection from unsafe prison conditions). In LeMaire, while the Ninth Circuit found that an injunction could be issued to protect inmates from unsafe conditions before a serious injury had occurred, the court nevertheless stated that "shackling a dangerous inmate in a shower" does not create a "sufficiently unsafe condition[,] [e]ven if the floors to the shower are slippery and LeMaire might fall while showering...." quoting Jackson, supra, 885 F.2d at 641 ("'slippery prison floors...do not state even an arguable claim for cruel and unusual punishment.'")

In Frost, by contrast, the inmate was disabled and on crutches, had fallen and injured himself several times on slippery shower floors; prison guards were aware of this and plaintiff had submitted several grievances to jail officials, advising them of the risk he faced. 152 F.3d at 1129. Moreover, a prison doctor had stated that Frost should be placed in the handicapped unit, but prison officials had failed to accommodate him. Id.[3]

*Discussion*

Defendant concedes that the facts show negligence, but argues that his omissions do not rise to deliberate indifference, seeking to confine them to the specific date of the incident on which plaintiff suffered his injury. MSJ, p. 5-8.

In his amended complaint, plaintiff herein has made an effort to allege circumstances that are more like those of Frost, supra, than those of Osolinski, supra, LeMaire,

---

[3] The legal standard applicable to plaintiff's claim has previously been set forth by this court (in adjudicating defendant's motion to dismiss) and is largely recapitulated here with appropriate modification and enhancement. See Order & Findings and Recommendations, filed on Jan. 31, 2006, pp. 5-7, adopted by Order, filed on March 17, 2006.

1  supra, or Jackson, supra.  Plaintiff makes the blanket claim that defendant Brida failed to instruct
2  the porters to fulfill their assigned duties for the entire period of time that he was the assigned
3  wing officer in H2, and continued to fail to do so following plaintiff's slip and fall injury.
4  Defendant sets forth in DUF 2 that his duties include supervising inmate porters assigned the job
5  of mopping the floors in the housing unit and in DUF 3 that porters are trained to put out wet
6  floor caution signs.  Although not explicitly set forth, it is a logical inference that though
7  defendant's duties included supervision of the porters, defendant was not the one who actually
8  instructed them with regard to putting out the caution signs for wet floors and may have never
9  done so; nor do defendant's undisputed facts make clear whether defendant has ever actually
10 monitored whether the inmate porters ever put wet floor caution signs out when mopping in the
11 wing at issue, notwithstanding his supervisory duties.  It is a short leap to conclude that this
12 omission resulted in the porters' failure to use the caution signs when mopping and that
13 defendant Brida must have had some awareness of this.  The question then arises whether such
14 conduct constitutes deliberate indifference to a substantial risk.

15         Defendant attempts to frame the claim as one where plaintiff merely alleges the
16 defendant failed to post a "caution" sign on a wet floor, in one instance, where plaintiff slipped
17 and fell.  MSJ, p. 7.  Defendant points out (MSJ, p. 9) that in Osolinski, wherein the denial of
18 summary judgment was reversed and qualified immunity granted, that three prior maintenance
19 requests for repair of the defective oven door therein at issue had been made prior to the
20 appellee's (plaintiff's) burn injury. 92 F.3d at 935.  However, that court also noted that the
21 appellee had "not pled conditions which rendered him unable to 'provide for [his] own safety in
22 the sense that they precluded him from avoiding the faulty oven door or rendered him unable to
23 perceive its defective condition."  Id., at 938.  Defendant also argues that, unlike as in Frost,
24 plaintiff did not have a mobility impairment prior to his fall.  MSJ, p. 10.

25         In opposition, plaintiff basically reiterates the allegations of his amended
26 complaint, emphasizing that defendant's "deliberate indifference," resulted in his serious injury,

submitting unauthenticated documents, which appear to be copies of plaintiff's medical records, following the date of his slip and fall injury. Opp., pp. 1-20. He states that he has been diagnosed by three prison doctors, Dr. Kofoed; Chief Medical Officer Dr. Bick; and Dr. Liou, all of whom confirm the diagnosis of Dr. Shellcroft, an Orthopedic Surgeon. Opp., p. 1. Plaintiff maintains that it is undisputed that he has had institutional chronos signed by doctors, as well as daily physical therapy, and has used a "tens unit" with a battery charger for his neck. Id.

In a copy of a document, noted as an "Outpatient Health Record," copied to plaintiff's central file, dated 5-12-04, apparently signed by Dr. Shellcroft, consulting Orthopedic Surgeon and Dr. Bick, the following is stated:

> Mr. Adams is suffering an apparent acute fracture and separation of the coccygeal joint and severe arthritis of the spine. He is under evaluation and has been referred to the orthopedic surgeon. He requires an elevator pass and a cane to aid him with walking. The chrono is valid for six months (through October 19, 2004).

Opp., p. 7.

Among the other exhibits is a copy of a trust account withdrawal order for a "Tens Unit" and rechargeable battery in the amount of $63.89. Opp., p. 8. A copy of a sheet of "Physician's Progress Notes," has an entry, evidently dated 4/29/04, noting plaintiff's age as 65, indicating that plaintiff "apparently slipped and fell in shower on 4/14/04 striking coccyx, low back [] back of his head," and also evidently noting, inter alia, that plaintiff is an insulin-dependent diabetic. Opp., p. 9. Plaintiff also includes what appears to be a copy of therapeutic stretching exercises for the back and ankle, as well as copy of what looks like an order for rehabilitation services, dated in 2005, and copies of a record of physical therapy treatments for some periods of time in 2004 (after the date of his fall) and in 2005 and 2006, and a copy of a document entitled "CMF Physical Therapy Evaluation," dated 5-9-05/12-19-05. Opp., pp. 10-19. He also includes a copy of what appears to be a medical chrono, signed by Dr. John Wills and Dr. Bick, CMO, dated 6/15/07, stating:

\\\\\

> Inmate has multiple medical problems, consisting mainly of diabetes, cervical degenerative disease, diabetic nephropathy, prostatic C.A. He requires a cane for ambulation, an elevator pass, and low bunk housing. If low bunk is not available at this institution, he may be transferred to a facility that can meet his clinical needs. This chrono is valid for one year (through June 14, 2008).

Opp., p. 6.

Despite the lack of proper authentication of the records plaintiff has submitted to which the defendant objects, and the lack of fully developed and supported allegations, the court accepts that this pro se inmate plaintiff was 65 or thereabouts at the time of his fall, that he suffered from certain medical conditions such as arthritis and diabetes at the time of his fall, that he was seriously injured by the fall and that the fall was caused by floors that had just been mopped but which had no caution signs to warn plaintiff of that fact. The court accepts, as well, that the lack of cautionary wet floor signs was a routine occurrence on plaintiff's housing wing. It is undisputed that it was defendant Brida's responsibility to supervise the porters who mopped the floors in the area at issue, and it is undisputed that this defendant was at least negligent in failing to have made sure that an appropriate caution sign was posted. It is an unresolved question whether this defendant ever saw to it that there were warning signs posted for the wet floors, before or after the injury-causing incident. Notwithstanding all of this, plaintiff neither alleges or makes any showing of ever having filed a grievance about the condition of the floors prior to having had his accident.[4] Nor does he allege or submit any evidence of inmate grievances about the failure to put up warning signs for wet floors having been filed and ignored.

The fact that defendant does not indicate by his statement of undisputed material facts that he did or did not fail to caution porters himself about the need for warning signs, as

---

[4] The court even takes judicial notice of plaintiff's own motion for summary judgment which was stricken as defective by the undersigned in the Order, filed on 2/2/07, wherein plaintiff included a grievance, filed on 4/25/04, about slipping on the wet floor and injuring himself and complaining about the lack of a caution sign. See docket entry # 21. This grievance submitted by plaintiff occurred *after* the injury-causing incident.

noted, does lead the inference that he failed regularly, and certainly on the date of the incident at issue, to do so.  Nevertheless, under the circumstances as alleged, defendant is correct that plaintiff simply has not supported a claim of defendant's deliberate indifference.  To meet the subjective prong of deliberate indifference, plaintiff must show more than that defendant should have perceived the risk.  "[A]n official's failure to alleviate a significant risk that he should have perceived but did not...." does not rise to the level of constitutionally deficient conduct.  Farmer v. Brennan,, supra, at 838, 114 S. Ct. at 1979.  Nor does obviousness of the risk per se impart knowledge as a matter of law.   Moreover, as also noted earlier, the Ninth Circuit has stated unequivocally that slippery prison floors do not set forth a constitutional violation.  Jackson v. State of Ariz., supra, 885 F.2d at 641.  Plaintiff simply does not meet the burden that was met in Frost, supra, 152 F.3d at 1129, to show that the defendant was aware of the risk by way of, for example, previous falls or earlier grievances.  Nor does he make clear that he himself was not alert to what he claims to have been a pervasive risk of wet floors without caution signs such that he would have taken extra care.

Because the court has found that the conduct alleged does not state a constitutional deprivation to which he was subjected, the qualified immunity defense need not be reached.

Accordingly, IT IS HEREBY RECOMMENDED that defendant's motion for summary judgment, filed on July 20, 2007 (# 34) be granted and judgment entered for defendant.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fifteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised

\\\\\

1  that failure to file objections within the specified time may waive the right to appeal the District

2  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3  DATED: 02/25/08

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:009
adam2474.msj